RENDERED:  AUGUST 1, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0406-DG

SARAH PARR                                                                APPELLANT


v.
ON REVIEW FROM FLOYD CIRCUIT COURT
HONORABLE JOHNNY RAY HARRIS, JUDGE
ACTION NO. 23-XX-00003


COMMONWEALTH OF KENTUCKY                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND L. JONES, JUDGES.

EASTON, JUDGE:  The Appellant Sarah Parr ("Parr") asks this Court to reverse

the Floyd Circuit Court's decision affirming her conviction for driving under the

influence ("DUI") after a jury trial in the Floyd District Court.  Parr argues that, in

DUI cases involving marijuana, the Commonwealth must present expert testimony

to explain blood test results and specifically to prove how the measured levels of

marijuana metabolites show impaired driving ability.  We granted discretionary

review to address this question.  Because the Floyd Circuit Court correctly rejected this argument, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

We must assess this case in the context of Parr's motion for a directed verdict.  To properly do so, we have independently examined the trial proceedings to relate a complete review of the evidence considered by the jury.

Parr has been a commercial driver for over thirty-five years.  On January 18, 2022, she was driving a Kenworth tractor truck with an attached trailer.  Earlier that day, she had delivered a load of DDGS, which stands for Distiller's Dried Grains and Solubles, a byproduct of ethanol production.  As Parr explained, DDGS may be used as chicken feed.

Parr had delivered the DDGS in Virginia.  DDGS can have a strong smell.  After the delivery, Parr had DDGS residue on her, and she changed her clothes.  She put the spoiled clothes in a bag in the cab of the truck.  Parr later explained that DDGS smells like something fermented, but she did not believe DDGS smells like marijuana.

After the delivery of the DDGS, Parr picked up a load of coke, a solid fuel made from carbonized coal.  She was to deliver this load of coke to Michigan.  She drove into Kentucky.  At Pikeville, Parr got a little off course as she planned to stop to have dinner.  Parr remembers having a police vehicle in front of her as she

drove toward Prestonsburg. Parr added that she broke her glasses when she got her dinner. She is required to wear her glasses to drive, but, contrary to her attorney's later argument, Parr insists that the lack of glasses had no impact on her driving.

The journey from Pikeville to the place where Parr would stop was about twenty miles. Parr admits that she may have swerved once when another truck caused her to do so. She may also have crossed lines as she was coming to a stop. She further described a maneuver which may have happened once during the trip as she "danced the trailer" to see if a car (which she called a "bumper sniffer") was following too closely. But Parr denies the dangerous driving observed by the two witnesses in the car behind her.

Thomas Combs and Sarah Slater[1] were on a date. They had been to Pikeville and were headed back to Prestonsburg. They pulled in behind Parr in Pikeville and followed her until her arrest. They saw Parr swerving all over the road. They became so alarmed that they called 911. During the audio of that call, both are heard exclaiming about Parr almost wrecking with a comment about approaching a rock wall. The dispatcher asked them to keep following with emergency flashers on until police arrived.

---

[1] We remind the trial courts about the importance of oversight in the making of the record. We have only the audio of the testimony of Slater as well as the direct examination of Officer David Duncan. The video was stuck on a laptop screen during the presentation of this evidence during the jury trial.

Not wanting to call the witnesses liars,[2] Parr testified that they must have seen another tractor-trailer. Parr was unable to explain why the witnesses did not confuse the vehicle they followed for miles with some other vehicle actually pulled over by the police.

Officer David Duncan ("Duncan") of the Prestonsburg Police Department ("PPD") himself saw Parr swerve on the road before she stopped. Parr insists that she was not pulled over by the police. Parr says she had pulled over of her own accord. Her phone had died, and she was consulting a paper map. She saw the police officer behind her only after she stopped.

When he initially approached Parr, Duncan smelled marijuana from the cab of the truck and on Parr. Duncan observed Parr's red, glassy, bloodshot eyes. Duncan had Parr come to the front of her truck. During this interaction, PPD Detective Hutchinson, an officer with over 25 years of experience, arrived at the scene to assist Duncan. He also smelled marijuana as Duncan had.

---

[2] Much of the questioning by the Commonwealth during the jury trial was by argumentative questions to which Parr did not object. Of particular concern, were the repeated questions to Parr about other witnesses being liars. The factfinder determines the credibility of witnesses, not the attorneys or witnesses. Evidence of dishonesty is governed by Kentucky Rules of Evidence ("KRE") 608 through opinion and reputation evidence with proper foundation. The Kentucky Supreme Court has made it clear that questions like those asked of Parr are improper. *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997). "Counsel should be sufficiently articulate to show the jury where the testimony of the witnesses differ without resort to blunt force." *Id.* The number of times the prosecutor engaged in this tactic in this case may have approached palpable error, but such error was not argued in this appeal.

Parr was cooperative. She consented to a search of her vehicle, and no marijuana was found. She attempted to perform field sobriety tests ("FSTs"). Duncan explained how he administered the three standard tests. The first is the Horizontal Gaze Nystagmus ("HGN") test measuring how the eyes react to stimulus. After that was a walk-and-turn test, and finally a one-leg stand. Parr exhibited various "clues" during these tests.[3] With probable cause to continue the DUI investigation, Duncan then asked if Parr would consent to a blood test, which she did.

Duncan took Parr to a nearby hospital, and blood was drawn. The blood[4] was tested by Jody Snodgrass ("Snodgrass") with one of the Kentucky State Police laboratories. Snodgrass has over ten years of experience and has probably performed over ten thousand analyses. The test of Parr's blood showed a measurement of 4 nanograms per milliliter of Delta 9 tetrahydrocannabinol ("Delta-9 THC") and 2 nanograms per milliliter of 11-Hydroxy-Delta 9 THC. The parties argued about the proper lab standards in place at the time with respect to the

---

[3] Parr said she had a "bad back" as a result of an accident in 2018 and suggests that this affected her ability to perform the tests. She did not offer any evidence of any medical diagnosis. The only record in evidence was the medical screening sheet from Parr's arrest on January 18, 2022. This sheet simply noted that Parr is a truck driver with back pain and takes over-the-counter medication for such pain.

[4] Parr's counsel suggested in closing argument that the results may be because of testing the wrong blood, but there was no evidence of any irregularity with the chain of custody or how the blood was tested.

latter number, which measures a metabolite or substance created through the body's elimination of Delta-9 THC. For reasons we will explain further, we will focus on the Delta-9 THC number for our analysis.

Parr said she does not smoke marijuana and did not do so on the day of her arrest. She also said she did not ingest marijuana in any other way. We note here the suggestion by Parr's counsel that CBD (abbreviation for cannabidiol) oil applied by a person could cause such a positive result. As Snodgrass explained, CBD would show a different substance, which was not found in this case. No evidence was offered at trial or by avowal of CBD oil use by Parr.

In addition to her own testimony, Parr offered the observations of the hospital phlebotomist and a deputy jailer who both observed Parr after her arrest. Neither smelled marijuana on Parr. Both said that Parr did not exhibit signs of being under the influence of anything when they interacted with her. Both conceded though that they were not in a position to see how Parr operated her tractor-trailer earlier that night.

Parr's counsel made a general motion for directed verdict at the close of the Commonwealth's case and renewed it at the close of all evidence. The district court denied the motion. The jury convicted Parr of DUI and sentenced her

to serve fourteen days in jail with a $200 fine. The circuit court on direct appeal affirmed. The case is now before us on discretionary review.[5]

## STANDARD OF REVIEW

Although the specific question presented is whether an expert witness is required to explain marijuana-related concentrations in the blood, the procedural posture of this case asks the broader question of whether a directed verdict should have been granted by the district court. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

## ANALYSIS

We start with a belated argument about preservation of the error claimed. At the close of the Commonwealth's evidence Parr's counsel made the following motion for directed verdict: "The Commonwealth hasn't proven its case sufficiently to create a jury issue sufficient to put this in front of the jury, your

---

[5] We understand the particular importance of clarifying what is or is not required to prove a marijuana DUI in Kentucky. Becoming effective in 2025, Kentucky has joined those states allowing medical use of marijuana. Kentucky Revised Statutes ("KRS") Chapter 218B. In addition to those cases resulting from continuing and still illegal recreational use of marijuana, the Commonwealth must anticipate cases with defendants having a prescription for marijuana and the challenges presented by the impact of this prescribed medication in DUI prosecutions.

-7-

Honor, so we move for a directed verdict of acquittal."[6]  This statement of less than

ten seconds in length was the entire motion.

A proper motion for directed verdict must "identify the particular

charge the Commonwealth failed to prove, and must identify the particular

elements of that charge the Commonwealth failed to prove."  *Ray v.*

*Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020).  There was only one charge in

this case but two elements – (1) operating of vehicle and (2) while impaired by

marijuana.  There was no dispute about the first element, but Parr's motion did not

specify any insufficiency of evidence of impairment by marijuana.

Nevertheless, in response to the directed verdict motion, the

Commonwealth outlined the evidence offered on both elements.  Still, at no point,

did Parr's counsel argue to the district court that the Commonwealth was required

to present expert testimony about how the specific levels found in Parr's blood

caused impairment.  When the case arrived in circuit court, the argument became

much more specific.  Without any objection from the Commonwealth, the circuit

court stated it saw the question to be answered on appeal as whether the

Commonwealth failed to present sufficient evidence because it did not have an

expert witness to explain how the levels found in the blood test impaired Parr.

---

[6] Trial Record, 4-25-23, at 5:09:33-5:09:42.

The failure to make a proper directed verdict motion should have limited the argument to review for palpable error. RCr[7] 10.26. But, on the direct appeal to the circuit court, the Commonwealth did not raise any question of preservation. Instead, the Commonwealth addressed the merits of the newly specific argument. We will not address the preservation issue further in these circumstances because we find no error, palpable or otherwise, by the district or circuit court.

"(1) A person shall not operate or be in physical control of a motor vehicle anywhere in this state: . . . (c) While under the influence of any other substance or combination of substances which impairs one's driving ability[.]" KRS[8] 189A.010(1)(c). The statute further provides that, if certain substances are found in a blood sample taken within two hours of operating a vehicle, then the statute is violated. KRS 189A.010(1)(d). Marijuana is specifically excluded from the list of such substances. KRS 189A.010(12).

Parr then argues that, because impairment must be proven in cases of marijuana use, the law requires expert testimony to explain how the measured levels in a blood test caused impairment. The argument is largely based on a concurrence in *Bridges v. Commonwealth*, 845 S.W.2d 541 (Ky. 1993). *Bridges*

---

[7] Kentucky Rules of Criminal Procedure.

involved an alcohol DUI. Thus, any comments about DUI due to other substances is *dicta*. Furthermore, a concurrence by two judges in the result of a case holds no precedential value. *See Ware v. Commonwealth*, 47 S.W.3d 333, 334-35 (Ky. 2001).

In the *Bridges* concurrence, Justice Joseph Lambert said: "When the violation is based on the use of another substance [not alcohol], there must be proof that such substance is capable of impairing driving ability." *Bridges*, *supra*, at 543 (Lambert, J., concurring). Justice Reynolds joined this concurrence. From here, Parr furthers her argument by pointing out that the original DUI statute allowed conviction if the substance "may impair" driving ability, but a recent change of the language replaced this phrase with "impairs."

This change to KRS 189A.010(1)(c) was not recent. This change was made in 1991,[9] although there have been several changes to the overall statute through the years, with the statute containing the "may impair" language at times. It may be conceded that proof that something impairs is different from proof that something *may* impair. But it does not follow that the Commonwealth must provide expert testimony in every marijuana DUI case to prove that the measured blood levels caused impairment.

---

[9] 1991 1st ex s, c15, §2 (eff. 7-1-91).

Impairment and the cause of impairment are two different things. Impairment may be proven in a number of ways. Impairment often may be observed as evidenced by erratic driving. Yet such evidence is not required for a DUI conviction. *Hayden v. Commonwealth*, 766 S.W.2d 956, 957 (Ky. App. 1989).

Standard FSTs may be evidence not only to support probable cause for arrest (an issue to be addressed by suppression motions rather than in front of a jury in DUI cases), but they are also evidence of impairment. HGN, walk-and-turn, and one-leg-stand tests indicate psycho-motor deficits, including reaction time, regardless of the *cause* of the impairment, which is a separate issue.

"There is no requirement to prove that field sobriety testing is scientifically reliable." *Iraola-Lovaco v. Commonwealth*, 586 S.W.3d 241, 245 (Ky. 2019). "Kentucky law is clear that evidence of FSTs is admissible *and* that officers observing a defendant's driving and physical condition may offer opinion testimony that the defendant was intoxicated." *Id*. (emphasis added). We emphasize *and* in this quote because it separates the admissibility of FSTs from the permissibility of an officer stating an opinion of intoxication from all that he or she observes, not just one FST result in isolation.[10]

---

[10] Duncan stated that he was taught in his training that marijuana use alone would not cause HGN.

The evidence in this case includes the lab result of the 4 nanograms per milliliter of Delta-9 THC in Parr's blood. As this Court has recognized, "Delta-9 THC (hereinafter referred to as 'THC') is the active metabolite in marijuana and is what causes intoxication and impairment." *Lyons v. Commonwealth*, 632 S.W.3d 776, 778 n.3 (Ky. App. 2020). That scientific fact is not debatable.

We may cite evidence in this record supplied by Parr to support this point. In support of her suppression motion, Parr submitted a scientific article about marijuana which recognize Delta-9 THC as what causes the psychoactive effects of cannabis.[11] This same article questions the ability to accurately correlate blood plasma concentrations of Delta-9 THC to impairment effects. "Smoking marijuana results in rapid absorption with peak THC plasma concentrations occurring prior to the end of the smoking."[12] "Effects from smoking cannabis products are felt within minutes and reach their peak in 10-30 minutes."[13]

Despite the challenges presented by how rapidly Delta-9 THC is processed by the body, some jurisdictions have tried to create *per se* statutory

---

[11] *Drugs and Human Performance Fact Sheets*, NAT'L HIGHWAY TRAFFIC SAFETY ADMIN. 7, https://www.nhtsa.gov/sites/nhtsa.gov/files/809725-drugshumanperformfs.pdf (last visited Jul. 28, 2025). Record at 54.

[12] *Id.* at 8. Record at 55.

[13] *Id*. at 10. Record at 57.

provisions similar to those for blood alcohol.  For example, Ohio created a testing process and has a *per se* rule of 2 nanograms per milliliter.[14]  The United Kingdom similarly finds impairment at the same 2 nanograms level.[15]  Kentucky has not legislated a *per se* level for marijuana instead leaving the factual determinations to be based on all evidence presented relevant to impairment and separately to its cause.

We will compare two cases to illustrate why the evidence in this case was sufficient to sustain the conviction.  In *Lyons*, a marijuana DUI case, the blood test showed a higher level of Delta-9 THC than in Parr's case.  We held it was error to allow the chemist who performed the blood test analysis to basically read from materials about how levels could impact a person because there was no showing of expertise for that witness about that subject or acceptability of the materials cited.  *Lyons*, *supra*, at 779.

The defendant in *Lyons* had admitted to smoking marijuana earlier.  We indicated that this fact alone was not enough to prove impairment.  There was no observation of erratic driving, and no FSTs had been performed.  That was

---

[14] Wong, *et al.*, *Establishing Legal Limits for Driving under the Influence of Marijuana*, Injury Epidemiology 2014 1:26.  Record at 30.

[15] *Id.*  Record at 31.

insufficient evidence to prove marijuana caused impairment, regardless of the Delta-9 THC levels.

By comparison, in *Kidd v. Commonwealth*, 146 S.W.3d 400 (Ky. App. 2004), there was also a test result, but it was of urine, which is not an indication of levels of Delta-9 THC; it simply verified that marijuana was processed through the body of the defendant. *Id*. at 401. Other evidence included the results of FSTs, which the defendant had "failed." The arresting officer smelled marijuana on the defendant. The officer also noticed red, glassy eyes. The officer had not observed erratic driving and had pulled the defendant over due to inoperable taillamps. That evidence was sufficient for conviction.

In Parr's case, three people, including an officer, observed erratic and frankly dangerous driving by Parr for up to twenty miles. Two officers smelled marijuana on Parr and in her vehicle. She had red, glassy, bloodshot eyes when she was stopped. She "failed" all three field sobriety tests. Her blood test showed the presence of Delta-9 THC, the ingredient in marijuana that causes impairment. There was no evidence of any other substance in Parr's blood. Although no marijuana was found during a search, the jury was entitled to infer from the rest of the evidence that Parr smoked the marijuana she had and threw out any related contraband which might have shown she smoked it. Applying the measure for a directed verdict, the district court did not err in denying such a verdict.

We note that even if the *Bridges* concurrence was the law, which it is not, that standard was also met. Snodgrass said that Delta-9 THC is the "active" ingredient in marijuana. It is this substance that has the "potential" to give a person "the desired effects" from the marijuana, such as getting "high." [16] In other words, evidence presented in this case showed that Delta-9 THC was "capable" of causing impairment.

We can foresee situations where either party may call expert witnesses in marijuana DUI cases, not unlike those experts called in alcohol DUI cases, who extrapolate from blood test results to explain how marijuana is processed by the body and likely timelines for its impairing effects, although the difference between how the body processes alcohol and marijuana may make this difficult. Some cases may involve multiple substances with the interaction leading one of the parties to call an expert witness about the cause of impairment. But these situations are not presented here.

## CONCLUSION

We hold that, in this DUI marijuana case, the Commonwealth was not required to call an expert witness to explain how Parr's blood test result showed impairment or otherwise to establish impairment based on Parr's blood test results.

---

[16] Trial Record, 4-25-23, at 4:08:19-4:09:25.

The Floyd Circuit Court did not err in affirming the denial of a directed verdict by the Floyd District Court in Parr's jury trial. The Floyd Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Edward L. Cooley
Lexington, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Solicitor General
Frankfort, Kentucky